Defendant was tried and convicted upon two indictments. The first charged him with employing George Amato, a minor, aged 15, at an establishment for the purpose of relaying bets and wagers upon the running of horses. The second charged that he conspired with John Doe and Richard Roe to violate the laws of the State against gambling. The verdict of the jury was "guilty in the manner and form as charged in both indictments." On this appeal the State concedes, as indeed it must, that the verdict of guilty and the judgment entered thereon, so far as the first indictment is concerned, cannot be sustained since there was no legal evidence to support it.
The indictment for conspiracy charges "that Michael Rappise, alias Jimmie Stone, John Doe and Richard Roe * * * did * * * unlawfully * * * conspire * * * to violate the gambling statutes of the State of New Jersey * * *." The theory of the State's case against the defendant is that Amato was a co-conspirator with the defendant and the two unknown persons named in the indictment as John Doe and Richard Roe.
To support the charge in the indictments the State called George Amato who was on the premises when raided. He testified that he was employed by an unknown man to take care of the premises at 4 Outwater Lane in Garfield, New Jersey, to answer the telephone and relay messages placing bets on horse races to certain telephone numbers in Paterson. When confronted by the testimony of Amato that he was employed by an unknown man, the State pleaded surprise and called as a witness Stephen Toth, Jr., an Assistant Prosecutor. His testimony was that Amato said prior to the trial that the defendant Stone had hired him the day before the raid, that Stone gave him a key, told him how to operate the telephones, gave him a card with the two Paterson telephone numbers and that Amato admitted relaying bets to the Paterson numbers. Mr. Toth also testified to an admission by Amato to having received a call from Stone, while the police were on the premises, in which Stone told him to "wrap up *Page 33 
the phones and get out of there in a hurry." The State introduced in evidence a photograph of Stone upon the back of which Amato had written that it was Stone who hired him. The State also introduced in evidence a written statement of Amato in which he said that Stone had hired him. Certain members of the police force testified to contradictory statements previously made by Amato.
Appellant argues that the court erred in admitting without qualification the photograph and statement in evidence and in permitting the Assistant Prosecutor and the police officers to testify that Amato verbally identified the man depicted in the photograph as Jimmie Stone and had made statements contrary to his testimony on the witness stand.
State v. D'Adame, 84 N.J.L. 386 (E. A. 1913) holds that where a witness testifies in a manner contradictory to a prior statement, under such circumstances where the State was surprised by such unexpected testimony, it might "neutralize the effect of such evidence by proving the self-contradictory statements of the witness to show that such evidence was untrustworthy." The court pointed out that "the previous statement, not made in the presence of the defendant, and not subject to cross-examination by him, could not be evidential against him" and at page 396 explained that the prior statement is not hearsay "because it is not used assertively, i.e., not testimonially" quoting fromWigmore, Evidence, § 1018, to the effect that "prior self-contradictions, when admitted, are not to be treated as assertions having any substantive or independent testimonialvalue." In the instant case there was no request to charge submitted to the trial judge that he limit the effect that the jury might give to the contradictory statements of the witness Amato. Nor do we think a formal request to charge necessary. InKohl v. State, 59 N.J.L. 445 (E. A. 1896), Justice Van Syckel in a concurring opinion said at p. 457: "The court should have instructed the jury, as the law unquestionably is, that this evidence offered to contradict Mrs. Kohl had no probative force whatever to establish the fact that Preinel had money, and thereby show that a motive existed to commit the *Page 34 
crime." To the same effect State v. D'Adame, supra, pp. 396 etseq.
The State argues that Amato being a co-conspirator, the testimony of the assistant prosecutor and the police officers as to acts and declarations of Amato are binding upon the other conspirators. This argument is untenable since Amato was not named in the indictment. In State v. Faure, 98 N.J.L. 18
(Sup. Ct. 1922), it was said: "As was stated by this court inState v. Smith, 89 N.J.L. 52, it has never been doubted that if the name of a person which was necessary for a description of the crime was known it must be inserted in the indictment, the reason being that the defendant is entitled to know as fully as possible the precise charge made against him, so that he may properly prepare his defense. Where the name of the particepscriminis is in fact known to the grand jury, that body is justified by the necessity of the situation in stating that the name of such person is unknown to it, but a false recital of such a fact is absolutely without legal justification. * * * The principle declared is not a mere abstraction, and the result of its application is that a defendant charged with a criminal conspiracy, entered into by himself and other persons named in the indictment, cannot be convicted on proofs which fail to show that any of the other named persons were parties to the corrupt agreement, even though it appears from the undisputed evidence that the defendant had conspired to perpetrate the identical criminal act specified in the indictment with a third person, known to the grand jury, but not named by it as a party defendant." We point out what appears to be an erratum in the above quotation. The report reads: "Where the name of theparticeps criminis is in fact known to the grand jury" but the reasoning leads irresistibly to the conclusion that the word "known" should read "unknown."
When the testimony as to prior contradictory statements and writings of Amato is excluded, except for the purpose of neutralization, there remains no substantive evidence to support the verdict of guilty.
The judgment under appeal is reversed. *Page 35