921 A.2d 264

**Anson Miguel EDMUND**

v.

**STATE of Maryland.**

**No. 94, Sept. Term, 2006.**

Court of Appeals of Maryland.

April 17, 2007.

Deborah S. Richardson, Assistant Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, MD, for Appellant.

Michelle W. Cole, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, on brief), Baltimore, MD, for Appellee.

Argued before RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, LAWRENCE F. RODOWSKY, (Retired, specially assigned), and ALAN M. WILNER, (Retired, specially assigned), JJ.

LAWRENCE F. RODOWSKY, J.

Appellant, Anson Miguel Edmund, was convicted in the Circuit Court for Baltimore County of first degree assault and use of a handgun in the commission of a felony. The court sentenced him to eight years incarceration for the first degree assault and imposed a concurrent five years incarceration, without parole, for the handgun crime. He asks this Court to dismiss the charge in the indictment for first degree assault because the State was unable to identify, by name, the individual who was assaulted. For the reasons hereinafter stated, we shall affirm.

The parties proceeded in the circuit court on an agreed statement of facts, following a plea of not guilty. In relevant part that statement reads:

"[On] January 20th, 200[5], approximately 2:50 p.m. in the afternoon, Officer Stein responded to the area of Enchanted Hills and Huntcliff Drive in Baltimore County for call of a shooting. The information on the 911 call advised that a black male suspect wearing a black jacket with a fur hoody shot a second black male subject wearing a red hat and a black jacket.

"A second call was received advising that the suspect ran into 26 Enchanted Hills. Officer Fischer responded to the area and was met by a witness, a Derick Edmund. He stated that his brother, the suspect Anson Edmund, had just shot at someone and the suspect at the moment was in 28 Enchanted Hills, Apartment 1, with a handgun.

"The apartment was surrounded. The suspect came out and was placed under arrest. The suspect then stated that the handgun was in the bathroom trash can.

. . . .

"Inside was found a semi-automatic handgun with wooden grips by Officer Chiodi in a tissue box in the hallway bathroom of the apartment.

"The suspect was transported to precinct three.

"Witness Derick Edmund stated he was in the kitchen of his apartment when his brother, the suspect, Anson Edmund, approached him, stated there was a subject outside picking on him. The witness stated that he walked outside with the suspect in order to mediate the problem with the other subject.

"The witness, Derick Edmund, said the subject outside was a black male who's approximately five foot eight, 240 pounds, beard, mustache and was wearing a black puffy jacket, a brown hooded sweatshirt, and a red skull cap.

"Derick Edmund stated he and the suspect met the subject across the street from 28 Enchanted Hills. He stated the subject asked the suspect, [']Do you want to scrap?['] and then took off his black jacket and let it fall to the ground. He stated the suspect, Anson Edmund, pulled out a small black gun and fired approximately three shots at the black male victim who had been wearing the red skull cap and black jacket with an orange lining.

"He stated the victim ran down the hill into 21 Enchanted Hills. The victim ran out of the location after one minute and ran towards the woods behind 21 Enchanted Hills.

. . . .

"The area was searched for the victim with negative results. The crime scene was located but a blood trail could not be located.

"K–9 Officer Clark along with Officer Muska searched the area with negative results and the perimeter of 21 Enchanted Hills was canvassed with negative results for the victim.

"Three shell casings were located across the street from 28 Enchanted Hills and a round lodged in the window between two panes of glass at 17 Enchanted Hills Road.

. . . .

"The suspect stated he had an ongoing problem with the victim but did not know his name or where he lived. He stated the victim had given him hard looks in the past but they never had a verbal confrontation before.

"The suspect stated that on the date of January 20, 2005, he had walked down to the bus stop from 28 Enchanted Hills and went past the victim, who gave him a look. Suspect stated on his way back to 28 Enchanted Hills at the bus stop he passed the victim again and that the victim came up to him and stated, [']What's up?['] and pointed his finger in the suspect's face. The suspect stated he turned away and walked towards 28 Enchanted Hills and the victim followed him while cursing and waving his finger at his face. The suspect stated the victim reached into his jacket pocket like he had something concealed but the suspect never saw a weapon or outline of a weapon.

"The suspect then went in his apartment, Apartment 1, 28 Enchanted Hills, went to his bedroom, retrieved a twenty-five caliber semi-automatic handgun from the dresser. He advised he told witness Derick Edmund that the subject outside was hassling him. He stated he and his brother exited the apartment and met up with the victim across the street.

"The suspect stated the victim then took off his jacket stating, [']Do you want to fight?['] And he admitted that when the boy took off his jacket he did not appear to have a weapon. The suspect advised he pulled a twenty-five caliber handgun, shot at the victim from a distance of three to four feet. He stated he was almost able to touch the victim with his outstretched hand at the time he began shooting.

. . . .

"At this time he made a confession stating he shot the victim.

. . . .

"There was a check of local hospitals for a victim of a gunshot wound that matched or looked to have been suffered by the victim and none was found.

"Continuing investigation was unable to determine the identity of the victim."

In the District Court, Mr. Edmund was served with a statement of charges to which was attached the five-page statement of probable cause by the arresting officer. Included in that statement was that the shooting occurred in the area of Enchanted Hills and Huntcliff Drive.

On February 14, 2005, a Baltimore County grand jury returned a five-count indictment against Mr. Edmund. The second count of that indictment reads:

"And the Jurors aforesaid, upon their oath aforesaid, do further present that ANSON MIGUEL EDMUND, on or about January 20, 2005, in Baltimore County, did unlawfully assault unknown/John Doe in the first degree; contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State. (1st Degree Assault—Criminal Law Article—CR 3–202) 1–1420."

Counsel entered his appearance for Mr. Edmund on March 8, 2005, and filed a seven-page omnibus motion. On page 6, Mr. Edmund alleges, without any explanation, "That the Criminal Information and/or Indictment information is defective."

Mr. Edmund's motions were heard on June 6, 2005, before Judge Robert E. Cadigan. Consistent with a prior discussion between counsel, the State moved to amend Count Two to which Mr. Edmund objected "only for the record." The amendment added the following description of the unknown victim:

"Physical description is a black male, approximately five feet eight inches tall, 240 pounds, with a beard and mus-

tache, wearing a black puffy jacket, brown hooded sweat-shirt and red skull cap."

Mr. Edmund then argued that the indictment "does not allege a cognizable crime," because "we do not have a name of a victim." He submitted that "where a fundamental element of the charge is omitted, the Court essentially lacks jurisdiction."

In its response, the State first argued that Mr. Edmund's challenge to the indictment was not timely under Maryland Rule 4–252. That rule, in relevant part, reads:

"**Motions in circuit court.**

"(a) **Mandatory motions.** In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

. . . .

"(2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense[.]

. . . .

"(b) **Time for filing mandatory motions.** A motion under section (a) of this Rule shall be filed within 30 days after . . . the appearance of counsel[.]"

The State contended that the brief, conclusory reference to the indictment in the omnibus motion did not comply with the rule, so that the oral motion in open court was untimely and the issue had been waived.

The circuit court, however, chose not to decide the motion on the ground of waiver; it addressed the merits. After putting the case of a murder by arson, in which a homeless person, whose DNA is not in any database, has been burned beyond recognition, the court denied the motion to dismiss, *inter alia*, the first degree assault count in the indictment.

Trial on the agreed statement and sentencing were before Judge John Grason Turnbull, II, following which Mr. Edmund timely appealed. This Court issued the writ of certiorari on its own motion prior to consideration of the matter by the Court

of Special Appeals. *Edmund v. State,* 396 Md. 11, 912 A.2d 647 (2006).

Appellant presents the following questions.

"1. Is a charge that the Appellant assaulted an unidentified John Doe victim a cognizable offense?

"2. Was the evidence sufficient to convict Appellant of first degree assault?"

As appellee, the State also presents a waiver argument, based upon Rule 4–252, which we shall address first.

# I

It is clear that Mr. Edmund's omnibus motion, insofar as it purported to challenge the indictment, was not in compliance with Rule 4–252(e).[1] *See Denicolis v. State,* 378 Md. 646, 660, 837 A.2d 944, 952–53 (2003) (stating that a "motion, seeking a panoply of relief based on bald, conclusory allegations devoid of any articulated factual or legal underpinning" does not comply with Rule 4–252(e) and "cannot be granted").

In *Denicolis,* this Court also recognized that it has "not disturbed the discretion of the trial courts to permit defendants to supplement unsupported allegations in the motion at or before the hearing, at least where the State is not unduly prejudiced by being called upon to respond immediately to allegations of which it had no prior notice." *Id.* at 660, 837 A.2d at 953. Here, there was no sandbagging of the State, which, in anticipation of Mr. Edmund's contention, amended the indictment before argument began on Mr. Edmund's motion. Consequently, we shall not disturb the circuit court's exercise of discretion in considering the motion on the merits, so that we, likewise, shall consider Mr. Edmund's first argument on the merits.

---

1. Rule 4–252(c) provides, in relevant part,
   "A motion filed pursuant to this Rule ... shall state the grounds upon which it is made, and shall set forth the relief sought.... Every motion shall contain or be accompanied by a statement of points and citation of authorities."

## II

Mr. Edmund invokes the principle "that a court is without power to render a verdict or impose a sentence under a charging document which does not charge an offense within its jurisdiction prescribed by common law or by statute." *Williams v. State*, 302 Md. 787, 791, 490 A.2d 1277, 1279 (1985) (citing cases). This principle is said to apply here because the absence of an identification, by name, of the victim does not comply with the statutory form of charging document and violates Article 21 of the Declaration of Rights.

### A. Cognizability

First degree assault is a statutory offense. Chapter 632 of the Acts of 1996, effective October 1, 1996, abrogated the common law crimes of assault and battery and enacted, *inter alia*, the statutory offense charged here. *Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999). Maryland Code (2002), § 3–202 of the Criminal Law Article (CL) sets forth the conduct constituting the felony of assault in the first degree. In relevant part, it reads:

"(a) *Prohibited.*— . . .

"(2) A person may not commit an assault with a firearm, including:

"(i) a handgun[.]"

"Assault" is defined by CL § 3–201(b) to mean "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." [2]

In determining the conduct proscribed by CL § 3–202(a)(2)(i), assault with a handgun, we look to the judicially

---

**2.** CL § 3–202(a)(1) also provides that "[a] person may not intentionally cause or attempt to cause serious physical injury to another." It is clear, however, that Judge Turnbull, when entering the guilty verdict on Count II, first degree assault, was finding a violation of CL § 3–202(a)(2), because, at the same time, he entered a guilty verdict on Count III, use of a handgun in the commission of a felony. Mr. Edmund implicitly agrees. By contending that no cognizable crime was charged under Count II, Mr. Edmund seeks to have the conviction on Count III fall if his argument on Count II is successful.

determined meaning of "assault." CL § 3–201(b). This Court has said:

> "Maryland recognizes two forms of assault: (1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery."

*Ford v. State*, 330 Md. 682, 699, 625 A.2d 984, 992 (1993) (internal quotation marks omitted). *See also Snowden v. State*, 321 Md. 612, 617, 583 A.2d 1056, 1059 (1991); *Dixon v. State*, 302 Md. 447, 457, 488 A.2d 962, 966 (1985), both quoting R. Perkins, *Criminal Law* 114 (2d ed.1969). Judge Cole, writing for this Court in *State v. Duckett*, 306 Md. 503, 510 A.2d 253 (1986), described a battery to be " '*any* unlawful force used against the person of another, *no matter how slight* [.]' " *Id.* at 510, 510 A.2d at 257 (quoting, with emphasis added, *Kellum v. State*, 223 Md. 80, 85, 162 A.2d 473, 476 (1960)). This Court further said that an "unlawful" touching is " '[a]ny touching of the person in an angry, revengeful, rude or insolent manner[.]' " *Duckett*, 306 Md. at 510, 510 A.2d at 257 (quoting L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 255, at 288 (2d ed. 1904) (Hochheimer)).

Consequently, other than that the victim be a human being, CL § 3–202 does not require that the victim be identified by name in the charging document in order for it to allege a cognizable crime under that statute. The point raised by Mr. Edmund is either one of pleading or of constitutional dimension. Neither affects the fundamental jurisdiction of the court.

### B. The Statutory Form

Mr. Edmund's argument principally relies on CL § 3–206, which sets forth a "sufficient" form of charging document for offenses under CL § 3–202. In relevant part, § 3–206 reads:

> "(a) *Assault—In general.*—An indictment, information, other charging document, or warrant for a crime described in § 3–202 ... is sufficient if it substantially states: '(name of defendant) on (date) in (county) assaulted (name of victim) in the ......... degree or (describe other violation)

in violation of (section violated) against the peace, government, and dignity of the State.' "

"(b) *Same—Bill of particulars.*—If the general form of indictment or information described in subsection (a) of this section is used to charge a crime described in § 3–202 ... in a case in the circuit court, the defendant, on timely demand, is entitled to a bill of particulars."

Because this statute contemplates that the "name of victim" will be inserted in the form, the subject indictment does not conform to the statute. The statute, however, is not intended to be exclusive, or to deny legal sufficiency to charging documents that do not strictly follow the suggested form.

■ Jurisprudence under the statutory short form of indictment for criminal homicide demonstrates that that statutory form, now CL § 2–208, is not the exclusive mode of pleading. A short form of indictment for criminal homicides first was enacted by Chapter 248 of the Acts of 1906. This form "may, but need not, be used in lieu of the common law forms." *State v. Ward,* 284 Md. 189, 200, 396 A.2d 1041, 1048 (1978). *See also Wooten–Bey v. State,* 308 Md. 534, 537–38, 520 A.2d 1090, 1091–92, *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 853 (1987); *Duley v. State,* 56 Md.App. 275, 278, 467 A.2d 776, 778 (1983). There is no indication that the General Assembly intended the short form of indictment for first degree assault to be any more exclusive than the short form for criminal homicide.

The question then becomes, "Does the common law currently require a victim to be identified by name in a charging document alleging assault?"

### C. The Evolving Common Law

It appears that, at English common law, identification in a charging document of the victim, by name, although desirable, was not a fundamental jurisdictional requirement nor a pleading defect resulting in dismissal. The practice in England seems to have been that persons could be identified in a charging document by name or description. *See* 14 & 15 Vict.

Chapter 100, an Act of Parliament of August 7, 1851.[3] This statute permitted an indictment to be amended, to conform to the proof, where the variance was not material to the merits of the case and the defendant was not prejudiced thereby. The Act applied, *inter alia,* to a variance

> "in the Name or Description of any Person or Persons, Body Politic or Corporate, therein stated or alleged to be injured or damaged or intended to be injured or damaged by the Commission of such Offence, or in the Christian Name or Surname, or both Christian Name and Surname, or other Description whatsoever, of any Person or Persons whomsoever therein named or described . . . ."

*Id.* § 1. In other words, a criminal cause could be *initiated* by a description of a person intended to be injured.

In this country, Hochheimer, writing in 1904, concluded: "If it sufficiently appears from the entire context of the indictment that a particular person was assaulted, or was beaten, the indictment is good." *Id.* § 263, at 294. Seemingly, the particularity can be furnished by description, without a name.

*State v. Crank,* 105 Utah 332, 142 P.2d 178 (1943), is instructive. In that case two Navajos had been arrested on charges unrelated to the reported case. In custody, "they purportedly confessed the murder of a white man some ten or twelve years previous, in San Juan County[, Utah]." 142 P.2d at 180. The criminal information alleged that the defendants

---

**3.** The preamble to 14 & 15 Vict. Chapter 100 describes the type of argument advanced by Mr. Edmund.

" 'WHEREAS Offenders frequently escape Conviction on their Trials by reason of the technical Strictness of Criminal Proceedings in Matters not material to the Merits of the Case: And whereas such technical Strictness may safely be relaxed in many Instances, so as to ensure the Punishment of the Guilty, without depriving the Accused of any just Means of Defence: And whereas a Failure of Justice often takes place on the Trial of Persons charged with Felony and Misdemeanor by reason of Variances between the Statement in the Indictment on which the Trial is had and the Proof of Names, Dates, Matters, and Circumstances therein mentioned, not material to the Merits of the Case, and by the Misstatement whereof the Person on Trial cannot have been prejudiced in his Defence:' Be it therefore enacted . . . ."

murdered " 'a human being, designated by the name of John Doe, his true name being to the accuser unknown.' " *Id.* Rejecting an argument based on the form of the information, the court said:

"But it is contended that even the short form of the statute sets forth the name of the person murdered, and such name is thereby made a requirement. This is untenable. If the name of the victim is known it should be alleged. If unknown, it should be alleged that the victim was a human being, or words of equal import, whose name was to the accuser unknown. Such allegation has uniformly been held sufficient even under the long form indictment or information. *Trumble v. Territory of Wyoming*, 3 Wyo. 280, 21 P. 1081, 6 L.R.A. 384 [(1889)]; *State v. Sartino*, 216 Mo. 408, 115 S.W. 1015 [(1909)]; *Reed v. State*, 16 Ark. 499 [(1855)]; 30 C.J. 94, 26 Am. Juris. 329; *People v. Gormach*, 302 Ill. 332, 134 N.E. 756, 29 A.L.R. 1120 [(1922)]; Bishop, New Crim. Proc. 412. There must, however, be some facts then supplied to identify the victim, to enable the defendant to prepare his defense, and to identify the crime, for the protection of defendant, in case defendant is acquitted, or placed in jeopardy and again charged with the same offense."

*Id.* at 180. *See also United States v. Schreiber,* 16 C.M.R. 639, 1954 WL 2536 (W.C.M.R.1954) (sustaining sufficiency of charges against member of the United States Air Force for murder in Korea of Oriental male, unidentified by name, caught stealing from supply depot).

The first case in this Court to discuss the short form of a criminal homicide indictment was *Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928). There, this Court said:

"At common law it was essential that the indictment should show the name of the person charged, the name of the person killed, the jurisdiction within which and the time at which the homicide occurred, that it was felonious and such of the facts and circumstances incident to the crime as were reasonably necessary to identify it, and to enable the

court to see whether a crime had been committed as charged. *Wharton Cr. Proc.*, ch. 16."

*Id.* at 155, 143 A. at 875. More recently, 2 *Wharton's Criminal Procedure* § 279, at 94 (12th ed.1975), concludes: "While it is desirable to allege the name of the victim, an accusation is sufficient even though it states that the name of the victim is unknown." (Footnote omitted.)

In *Adams v. State*, 202 Md. 455, 97 A.2d 281 (1953), *rev'd on other grounds*, 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954), one of the issues was the legal consequence of a variance. The indictment alleged that the defendant had conspired to violate the lottery laws with one Walter Rouse, but the proof showed that the defendant had conspired with Reuben Maurice Jones, and others. *Id.* at 457, 97 A.2d at 282. In that context, this Court said:

"One of the early rules of the common law was that the name of a person necessary for complete description of a crime should be stated in the indictment, if the name of such person is known. The obvious reason for this rule is that every person indicted for a crime is entitled to be informed of the nature of the charge as precisely as possible to enable him to properly prepare his defense. *State v. Rappise*, 3 N.J.Super. 30, 65 A.2d 266 [(1949)]. However, in order to prevent a failure of justice, it is now generally accepted that if the name of a person necessary for complete description of a crime is unknown to the grand jurors, they are justified in alleging that the name of such person is unknown to them."

*Id.* at 458–59, 97 A.2d at 282–83.

In any event, the sufficiency of a charging document, as a matter of pleading, is now controlled by rules of court. Maryland Rule 4–202(a), dealing with the general requirements of the content of a charging document, provides:

"A charging document shall contain the name of the defendant or any name or description by which the defendant can be identified with reasonable certainty, except that the defendant need not be named or described in a citation

for a parking violation. It shall contain a concise and definite statement of the essential facts of the offense with which the defendant is charged . . . ."

Thus, this Court, speaking in 2003, said:

"Although identifying the victim in cases where there is a known victim is not a jurisdictional requirement, it is certainly a useful thing to do and may, in some circumstances, be required in order to satisfy the defendant's Federal and State Constitutional rights to fair notice."

*Denicolis v. State,* 378 Md. at 662, 837 A.2d at 954.

### D. Article 21

The liberalization of criminal pleading, however, cannot erode the principle, "[t]hat in all criminal prosecutions, every man hath a right to be informed of the accusation against him[.]" Maryland Declaration of Rights, Article 21. *Williams v. State,* 302 Md. at 791, 490 A.2d at 1279, set forth the purposes served by this constitutional requirement. They include

"(1) putting the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct; (2) protecting the accused from a future prosecution for the same offense; (3) enabling the accused to prepare for his trial; (4) providing a basis for the court to consider the legal sufficiency of the charging document; and (5) informing the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case."

*Id.*

In the instant matter, each of these purposes is served. In his argument, Mr. Edmund emphasizes the first two purposes. The absence of the name of the victim did not deprive Mr. Edmund of notice that he was charged with a first degree assault that took place on January 20, 2005, the day of his arrest. Indeed, this case is uniquely inappropriate for a contention that the accused did not know the criminal conduct

charged, inasmuch as Mr. Edmund confessed to the conduct and agreed in court that he had confessed.

Nor will Mr. Edmund be subject to double punishment. The purported concern is that Mr. Edmund will, at some time in the future, be prosecuted for having assaulted, on January 20, 2005, outside 28 Enchanted Hills, in Baltimore County, a black male, five feet eight inches in height, and then weighing 240 pounds, with a beard and mustache, and that the State will contend that that assaultee is not the John Doe of this cause. The concern is fanciful. Even if the State were to initiate such a prosecution, Mr. Edmund, in support of a defense of *autrefois convict*, could use the entire record of this cause. He would not be limited to the allegations of the indictment, as amended.

Consequently, we hold that the circuit court did not err in denying appellant's motion to dismiss the indictment.

## II

The remaining contention submitted by the appellant is that there was insufficient evidence to support his conviction, because the victim did not testify that he had been placed in fear and that he had not consented. The trier of fact could certainly infer those second level facts, without victim testimony. Mr. Edmund confessed that he fired the shots "at" the victim. It was agreed that Mr. Edmund's brother, the eyewitness, would testify the defendant fired the shots "at" the victim. Mr. Edmund fired three rounds from a handgun at a distance of three to four feet from the victim, causing the victim to flee. The evidence was sufficient.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**