20 A.3d 192

**Clinton Edward SINCLAIR**

v.

**STATE of Maryland.**

**No. 0073, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

May 26, 2011.

David P. Putzi (Fischer & Putzi PA, on the brief), Glen Burnie, MD, for Appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., WATTS and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

RODOWSKY, J.

Over three and a half years after he had been convicted of child abuse, the appellant, Clinton Edward Sinclair (Sinclair), filed a motion in his criminal case seeking a judicial determination that he was not required to register as a child sex offender. From the denial of that relief, Sinclair appeals. As explained below, we shall vacate and remand on procedural grounds without reaching the merits.

By an indictment filed January 6, 2006, in the Circuit Court for Anne Arundel County, Case No. 02–K (*i.e.,* Criminal)–06–38, Sinclair was charged, *inter alia,* with child abuse, alleged to have occurred on or about September 3, 1989 through September 2, 1994, in violation of Maryland Code (1957), Article 27, § 35C(b)(1). The statutory reference is to the 1996 Replacement Volume. The cited statute made child abuse by

a custodian a felony. Section 35C defined "abuse" in subsection (a)(2) to mean:

"(i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances that indicate that the child's health or welfare is harmed or threatened thereby; or

"(ii) Sexual abuse of a child, whether physical injuries are sustained or not." [1]

Sinclair pleaded guilty to the child abuse charge on June 22, 2006. From the prosecutor's statement of facts in support of the guilty plea, it is clear that the abuse was sexual. Sinclair agreed that it was a fair statement of facts. The court sentenced Sinclair to four years of house arrest, with all but twelve months suspended, and placed him on five years probation, beginning with sentencing.

The probation order did not require Sinclair to register as a sex offender, and the parties agree that, at the time of his conviction, there was no statutory requirement that he register. Thereafter, the sex offender registration statutes were amended a number of times in order to give retroactive effect to the requirement.[2] Of relevance here is the amendment by Chapter 541 of the Acts of 2009, effective October 1, 2009, codified as Maryland Code (2001, 2008 Repl.Vol., 2009 Cum. Supp.), § 11–702.1(c)(1) of the Criminal Procedure Article (CP). It provides:

---

1. Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 35C was enacted by Chapter 712 of the Acts of 1994 and was not effective until October 1, 1994, after the last date of the offense as charged in the indictment. Prior to October 1, 1994, the provisions were found, respectively, in Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 35A(b)(1) and (a)(2)(i) and (ii). The language is identical in the referenced sections immediately before and after October 1, 1994.

2. In his brief to us, Sinclair does not question the retroactive feature of any of these statutes. See *Young v. State*, 370 Md. 686, 806 A.2d 233 (2002).

"(c) *Retroactivity of subtitle; notice.*—(1) Notwithstanding any other provision of law to the contrary, this subtitle shall be applied retroactively to include:

. . .

"(ii) a person convicted on or after October 1, 1995, of an offense committed before October 1, 1995, for which registration as a child sexual offender is required under this subtitle."

On February 4, 2010, Sinclair filed in the Circuit Court for Anne Arundel County a "MOTION TO DENY UNLAWFUL ORDER OF PAROLE & PROBATION and/or MOTION FOR APPROPRIATE RELIEF." It was filed in his Criminal Case No. 02–K–06–38. He alleged that, based on the 2009 amendment to the registry statutes, he "was recently ordered by the Division of Parole and Probation, by and through the Defendant's supervising Agent Greg Cherry, to register." What is referred to as an "order," if written, is not in the record. Sinclair's motion argued that, as a matter of statutory construction, he was not a "child sex offender" within the intendment of the 2009 amendment.

The circuit court conducted a hearing on the motion, at which no evidence was taken. The court denied the motion.[3] When this appeal was noted, the court ordered that "any attempts on behalf of law enforcement, prosecutors, or the Division of Parole and Probation to have the above-named defendant register as a sex offender are hereby stayed pending the outcome of the appeal in the present matter."

In this Court, Sinclair presents the following issue:

---

3. The court concluded its ruling by stating:
 "I simply just don't read [the statute] the way that you do, [counsel]. So I am going to require him to register as a child sexual offender." The docket entry reads: "DEFENDANT MOTION FOR APPROPRIATE RELIEF—DENIED; DEFENDANT REQUIRED TO REGISTER AS A CHILD SEXUAL OFFENDER." There is no separate document setting forth the judgment.
 We interpret the court's concluding remark simply to be a statement of the consequence of the ruling on the merits. If the court had intended to issue an affirmative injunction, it would have to be in writing. *See* Maryland Rule 15–502(e)(1) (2011).

"The circuit court erred in ruling that the retr[o]activity clause contained in Section 11–702.1(c)(1)(ii) of the Criminal Procedure Article of the Annotated Code of Maryland required appellant to register as a 'child sex offender[.]' " (Capitalization reduced).

## Motion to Dismiss

 The State has moved to dismiss the appeal, asserting that there is no final judgment and that the motion does not present a justiciable issue; rather, it seeks an advisory opinion.[4] Because the court's ruling fully disposed of the only issue that was before the court, there is a final judgment. *See In re Special Investigation No. 185*, 293 Md. 652, 655 n. 2, 446 A.2d 1151, 1154 n. 2 (1982).

 The issue that Sinclair seeks to raise, and the relief that he seeks, presents a civil matter that is not cognizable in his criminal cause. The thrust of Sinclair's motion is not collaterally to challenge his conviction that has long since been final and unappealable. His statutory construction point is directed to a collateral consequence of the conviction.

If Sinclair is a child sexual offender, as a result of his conviction in 2006, and of the 2009 amendment to CP § 11–702.1, the obligation falls on him to register. *See* CP § 11–704(a)(1) ("A person shall register with the person's supervising authority if the person is" a child sexual offender.). Enforcement of this registration obligation is by criminal prosecution. CP § 11–721(a) provides that "[a] registrant may not knowingly fail to register" and "[a] person who violates this section ... for a first offense, is guilty of a misdemeanor and on conviction is subject to imprisonment ... or a fine ... or both." CP § 11–721(b)(1). Thus, the relief requested by Sinclair seeks to avoid application of the registration requirement to him, with the result that no criminal prosecution under CP § 11–721 may be brought. Accordingly, the relief

---

4. Sinclair has not filed a reply brief or other response to the State's motion to dismiss.

that Sinclair requests is not available under the Postconviction Procedure Act, because he does not seek to "set aside or correct the [2006] judgment or sentence." CP § 7–102(b)(1).

 The State suggests that Sinclair's remedy is a writ of error coram nobis. The relatively recent expansion of the availability of coram nobis to include persons who are neither confined nor on parole or probation but who suffer significant collateral consequences from their conviction, does not aid Sinclair's cause. Coram nobis is a challenge to the conviction that alleges an error of fact or law. *Skok v. State*, 361 Md. 52, 78, 760 A.2d 647, 661 (2000).

 Further, coram nobis is a civil action. In *Ruby v. State*, 353 Md. 100, 724 A.2d 673 (1999), Ruby had filed a number of motions seeking a new trial which were denied, but the clerk did not communicate to Ruby the adverse ruling that effected a final judgment. Ruby then sought, in a separate civil action, a writ of coram nobis, which the circuit court issued, directing a belated appeal. The State did not appeal from that civil judgment. *Id.* at 103–04, 724 A.2d at 675. When Ruby appealed the criminal conviction, the State moved to dismiss and this Court did so.

On certiorari, the Court of Appeals vacated and remanded because this Court had "considered and decided the wrong case." *Id.* at 104, 724 A.2d at 675. Judge Cathell, writing for the Court, explained:

"A collateral challenge, by its very nature, is a separate and distinct civil procedure by which a defendant may challenge his or her conviction, sentence, or imprisonment. *See State Bar Ass'n, Inc. v. Kerr*, 272 Md. 687, 689–90, 326 A.2d 180, 181 (1974) (noting, in discussing the concept of final judgments, that the federal post conviction act, 'like its Maryland counterpart, the Post Conviction Procedure Act (Maryland Code (1957, 1971 Repl.Vol.), Art. 27, § 645A *et seq.*), does not constitute a part of the original criminal cause, but is an independent and collateral civil inquiry into the validity of the conviction and sentence.'). Because collateral challenges are separate from the underlying judg-

ment, the filing of such an action typically initiates an entirely new action in which the defendant sets forth his or her claims. If the defendant prevails in the civil court where he or she sought collateral relief, that court then issues the writ directing the criminal court pursuant to the terms of the writ."

*Id.* at 107, 724 A.2d at 677.

■ Declaratory judgment has been recognized as the procedure for obtaining, under appropriate circumstances, a ruling on the constitutionality of a statute, the violation of which carries criminal sanctions. In *Davis v. State,* 183 Md. 385, 37 A.2d 880 (1944), a physician, who for years had been advertising his services, challenged by declaratory judgment a statute that strictly circumscribed advertising by physicians. Although the ultimate ruling upheld the statute, the Court first considered justiciability and said:

"However, if a person is directly affected by a statute, there is no reason why he should not be permitted to obtain a judicial declaration that the statute is unconstitutional. It is true that a court of equity has power to restrain the enforcement of a void statute or ordinance at the suit of a person injuriously affected. But in this case complainant is affected by the Act of 1943 and he is entitled to apply for a declaratory judgment under the Uniform Act, rather than run the risk of being subjected to criminal prosecution, and possibly having his license revoked."

*Id.* at 389, 37 A.2d at 883–84 (citations omitted). *See also Police Comm'r of Baltimore City v. Siegel Enterprises,* 223 Md. 110, 162 A.2d 727, *cert. denied,* 364 U.S. 909, 81 S.Ct. 273, 5 L.Ed.2d 225 (1960) (affirming a declaratory judgment holding the Crime Comic Books Act unconstitutional, at the instance of a newsstand and bookstore owner).

Under the federal declaratory judgment act, in a case challenging a Georgia statute criminalizing the performing of certain abortions, the Supreme Court concluded that the controversy was justiciable as to the physician plaintiffs, although none of the physicians had been prosecuted. *See Doe*

*v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The Court said:

> "The physician is the one against whom these criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions. The physician-appellants, therefore, assert a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."

*Id.* at 188, 93 S.Ct. at 745.

Although the cited cases all involve constitutional challenges to statutes, the Maryland Declaratory Judgment Act provides that "[a]ny person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of *construction* or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations under it." Maryland Code (1974, 2006 Repl. Vol.), § 3–406 of the Courts and Judicial Proceedings Article (CJ) (emphasis added).

In the instant matter, we need not decide *when* Sinclair may raise his issue by declaratory judgment, that is, we do not decide whether the issue is ripe for judicial determination. *See, e.g., Hitchcock v. Kloman*, 196 Md. 351, 76 A.2d 582 (1950) (holding that a declaratory judgment action did not lie at the behest of a naturopath who maintained, contrary to opinions of the Attorney General, that medical licensing statutes did not apply to naturopathy, but against whom no prosecution had been threatened);[5] *Hammond v. Lancaster*, 194 Md. 462, 478, 71 A.2d 474, 481 (1950) (dismissing, as not

---

**5.** Doctor Hitchcock subsequently applied for a medical license, and was told by the State Board of Medical Examiners that it was not authorized to issue a license to naturopaths, as such. He then sued in the federal court, challenging the constitutionality of the Maryland statutes. *Hitchcock v. Collenberg*, 140 F.Supp. 894 (D.Md.1956). While the suit was pending, Hitchcock was arrested, but the State's Attorney delayed presenting to the grand jury, pending the outcome of the civil case. The court said that "[t]he disagreement between the parties is no longer nebulous or contingent." *Id.* at 898.

presenting a justiciable controversy, a declaratory judgment action asserting that a loyalty oath statute was unconstitutional where the plaintiffs included a State employee who did "not allege that she is threatened with discharge, that she has been ordered to take an oath, or that she has refused or will refuse to take it").

The ripeness aspect of justiciability has been codified in the Declaratory Judgment Act. Subject to an exception not relevant here, CJ § 3-409(a) provides:

"(a) *In general.*—. . . [A] court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

"(1) An actual controversy exists between contending parties;

"(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

"(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it."

It is sufficient for the present to hold, as we do, that a petition for a declaratory judgment may not be filed in a criminal cause. "[T]he declaratory judgment procedure is available at law as well as in equity[.]" *Himes v. Day,* 254 Md. 197, 206, 254 A.2d 181, 186 (1969). The merger of law and equity for purposes of pleadings, parties, court sittings, and dockets, by the adoption of Maryland Rule 2-301 in 1984, did not merge criminal causes as well. Title 2 of the Maryland Rules applies to civil actions and Title 4 applies to criminal causes. *See* Maryland Rules 1-101(b) and (d).

More fundamentally, a charging document, alleging a cognizable crime, confers jurisdiction on a criminal court. Chief Judge Robert Murphy, writing for the Court of Appeals in *Williams v. State,* 302 Md. 787, 490 A.2d 1277 (1985), clearly articulated the principle, saying:

> "It is fundamental that a court is without power to render a verdict or impose a sentence under a charging document which does not charge an offense within its jurisdiction prescribed by common law or by statute. Manifestly, where no cognizable crime is charged, the court lacks fundamental subject matter jurisdiction to render a judgment of conviction, i.e., it is powerless in such circumstances to inquire into the facts, to apply the law, and to declare the punishment for an offense."

*Id.* at 791–92, 490 A.2d at 1279 (citations omitted). *See also Edmund v. State,* 398 Md. 562, 570, 921 A.2d 264, 268 (2007). The charging document does not confer on the circuit court the power to issue a declaratory judgment in a criminal cause.

 Here, in Sinclair's criminal cause, the judgment of conviction has been final for many years, and Sinclair does not challenge that conviction in this proceeding. Under these circumstances, Maryland law does not recognize the filing of a declaratory judgment action in a criminal cause, even if the object of the declaratory judgment action is to obtain a ruling concerning a collateral consequence of the conviction.

For all the foregoing reasons, we enter the mandate set forth below.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED. CASE REMANDED TO THAT COURT, WITHOUT AFFIRMANCE OR REVERSAL, WITH INSTRUCTIONS TO DISMISS, WITHOUT PREJUDICE, THE APPELLANTS MOTION FILED FEBRUARY 4, 2010.**

**COSTS TO BE PAID BY THE APPELLANT.**