REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2525

September Term, 2011

REYNALDO PARADO RODRIGUEZ

v.

STATE OF MARYLAND

Woodward,
Zarnoch,
Moylan, Charles E., Jr.
        (Retired, Specially Assigned),

JJ.

Opinion by Woodward, J.

Filed: January 28, 2015

Appellant, Reynaldo Parado Rodriguez, committed a third degree sexual offense involving a fifteen-year-old victim in 1996, for which he was convicted in 1998 and sentenced in 1999. At the time of the commission of the crime, as well as at the time of sentencing, appellant was not required to register as a sex offender under the Maryland sex offender registration act ("MSORA"). As a result of the 2001 amendment to MSORA, however, appellant was required to register for the rest of his life. The 2010 amendment to MSORA placed additional registration requirements on homeless registrants, which appellant failed to comply with when he became homeless in 2011. Appellant was charged in the Circuit Court for Frederick County with failing to register as a homeless sex offender. At a hearing on January 17, 2012, appellant admitted to failing to register as required by the 2010 amendment to MSORA, but argued to the court that he could not be convicted because he could not be required constitutionally to register in the first place. The circuit court rejected appellant's argument, convicted him of failing to register, and sentenced him to five years' incarceration, with all but eighteen months suspended.

On appeal, appellant presents two questions for our review:

1. Was the evidence insufficient to sustain the conviction for failing to register and must [a]ppellant no longer have to register?

2. Must [a]ppellant's conviction for failing to register be vacated because the plea agreement for the predicate conviction did not contemplate a registration requirement?

We answer both questions in the negative and, accordingly, shall affirm.

**BACKGROUND**

*Predicate Offense*

In August 1996, appellant, who was then twenty-six years old, had sexual intercourse with a fifteen-year-old coworker. Approximately one year later, the victim's parents complained, and on September 29, 1998, appellant pled guilty to committing a third degree sexual offense in violation of Article 27, § 464B.[1] On January 4, 1999, the circuit court sentenced appellant to eighteen months' incarceration, all of which was suspended in favor of two years' supervised probation, starting on the day of sentencing.

In November of 1999, the Department of Public Safety and Correctional Services (the "Department") charged appellant with violating his probation by failing to (1) pay his monthly supervising fee, and (2) inform his supervising agent of his current address and place of employment. Appellant stipulated to a violation of probation, and on March 31, 2000, the circuit court sentenced appellant to eighteen months incarceration, suspending all but six days to be served on three consecutive weekends. The court also increased the period of probation from two years to three years, commencing on January 4, 1999 and terminating on January 4, 2002.

---

[1] Article 27, § 464B defined third degree sexual offense as including "[a] sexual act with another person who is 14 or 15 years of age and the person performing the sexual act is at least 21 years of age." Md. Code (1957, 1996 Repl. Vol.), Article § 464B(a)(3). That section has been recodified without substantive changes in Md. Code (2002, 2012 Repl. Vol.) § 3-307(a)(4) of the Criminal Law (I) Article ("CL").

*Sex Offender Registration*

At the time that appellant committed the third degree sexual offense in 1996, the version of MSORA in effect was the original one enacted in 1995. Md. Code (1957, 1992 Repl. Vol., 1995 Cum. Supp.), Article 27, § 692B. Under Article 27, § 692B, only child sex offenders, as defined by the statute, were required to register. Under that definition, appellant was not a child sex offender. *Id*. § 692B(a). At the time of appellant's conviction and sentencing, MSORA had been recodified as Article 27, § 792 and expanded by a 1997 amendment to require registration for "offenders," "sexually violent offenders," and "sexually violent predators." Md. Code (1957, 1996 Repl. Vol., 1997 Cum. Supp.), Article 27, § 792(a)(7); *see also Graves v. State*, 364 Md. 329, 336-39 (2001) (discussing the early history of MSORA). A "sexually violent offender" included a person who, like appellant, had been convicted of an offense under Article 27, § 464B and required registration for a period of ten years. *Id.* § 792(a)(9)-(10), (h). The 1997 amendment to MSORA, however, applied only to offenses committed on or after July 1, 1997, and thus did not apply to appellant's 1996 offense. Editor's note, Article 27, § 792.

In 1999, the General Assembly made significant revisions to MSORA. *Ochoa v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 315, 319-20 (2013). Relevant to the instant case, the 1999 amendment subjected a sexually violent offender who had committed an offense under Article 27, § 464B to lifetime registration. Md. Code (1957, 1996 Repl. Vol., 2000 Cum. Supp.), Article 27, § 792(d)(5)(ii). The retroactive application of the 1999

amendment, however, was limited to sexually violent offenders who had committed offenses after July 1, 1997, again removing appellant's 1996 offense from the purview of MSORA.

In 2001, the General Assembly made further changes to MSORA, this time adding a significant retroactivity provision (the "2001 Retroactivity Provision"). *See* Md. Code (2001), § 11-702.1 of the Criminal Procedure Article ("CP 2001").[2] In relevant part, the 2001 Amendment required the retroactive registration of offenders "convicted of an offense committed before July 1, 1997," who were "under the custody or supervision of a supervising authority on October 1, 2001." CP 2001 § 11-702.1(a). The 2001 Amendment defined supervising authority as including the Director of Parole and Probation. CP 2001 § 11-701(i)(11).

Appellant was on probation on October 1, 2001, and thus met the requirement for retroactive registration under the 2001 Retroactivity Provision. CP 2001 § 11-702.1(a). As a sexually violent offender, who had violated Article 27, § 464B, appellant was required to register for the remainder of his life. CP 2001 § 11-707(a)(4)(ii)(2).

Although required to register in 2001 as a sexually violent offender, appellant was not notified by law enforcement of his registration obligation until March 13, 2007.[3] At the

---

[2] This opinion makes several references to different versions of MSORA, so the year of the specific amendment referenced will be stated for clarification purposes.

[3] The Notice To Registrants identified appellant as a "Child Sexual Offender." This appears to be a misidentification. In 2007, the definition of "Child sexual offender" did not include violations of CL § 3-307 where the victimized minor was at least fifteen years old. CP 2007 § 11-701(b).

hearing on the conviction challenged *sub judice*, appellant testified that he learned he had to register when "in 2007 they came to my job, and [] I lost my job the next day."[4]

In 2010, the General Assembly again made major changes to MSORA.[5] The 2010 amendment reclassified sex offenders into tiers: (1) Tier I offenders must register in person every six months for fifteen years, with the possibility of a reduction in the term to ten years; (2) Tier II offenders must register in person every six months for twenty-five years; and (3) Tier III offenders must register every three months for life. CP 2010 § 11-707. The 2010 amendment contained a retroactive provision that applied the amendment to any person who qualified as a Tier I, II, or III offender and who was subject to registration on September 30, 2010 (the "2010 Retroactivity Provision").[6] CP 2010 § 11-702.1. Because appellant was

---

[4] The record does not clarify who exactly "they" were, although the notification form given to appellant in March 2007 suggests that it may have been the Frederick County Sheriffs Office.

[5] The previous year, 2009, the General Assembly enacted a retroactive provision that applied MSORA to sexually violent offenders and sexually violent predators convicted on or after July 1, 1997, of offenses committed before July 1, 1997, as well as child sex offenders convicted on or after October 1, 1995, for offenses committed before October 1, 1995, irrespective of when the offender was incarcerated or under supervision. CP 2009 § 11-702.1(c); *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 535, 546 (2013) ("*Doe I*"). Because appellant was already required to register by virtue of the 2001 amendment to MSORA, the 2009 amendment did not apply to him. *See* discussion of appellant's *ex post facto* claim under *Doe I*, *infra*.

[6] The retroactive provision of the 2010 amendment also applied to any person qualifying as a Tier offender who was under the custody or supervision of a supervisory authority on October 1, 2010, or was convicted of any "crime" (later changed to "felony," 2011 Md. Laws, Ch. 374) on or after October 1, 2010, who had a prior conviction for an offense for which registration as a sex offender was required by the amendment.

(continued...)

5

subject to registration on September 30, 2010 (as a result of the 2001 Retroactivity Provision) and his third degree sexual offense with a fifteen-year-old qualified him as a Tier II offender, appellant was required by the 2010 amendment to register for twenty-five years. Therefore, the retroactive application of the 2010 amendment to MSORA actually *reduced* appellant's registration period from lifetime to twenty-five years.

### *Failure to Register*

After becoming a registrant by application of the 2001 Retroactivity Provision, appellant, like all sex offenders, faced penalties for failing to register. *See* CP 2001 § 11-721. Under the version of MSORA relevant to the matter *sub judice*, registration generally requires sex offenders to (1) *notify* law enforcement of their registrant status, and also of changes of circumstance like a new residence or job, and (2) to *disclose* various information to law enforcement at the time of registration, such as the offender's name, address and the nature of his predicate offense. *See* CP 2010 §§ 11-705, -706. Registrants who fail to abide by the notification requirements of CP 2010 § 11-705, or the disclosure requirements CP 2010 § 11-706, are guilty of the criminal offense of failing to register pursuant to CP 2010 § 11-721(a).[7]

---

[6](...continued)
CP 2010 § 11-702.1.

[7] Failure to register as a first-time offense is a misdemeanor. CP 2010 § 11-721. A subsequent failure to register is a felony. *Id*.

6

Prior to the 2010 amendment to MSORA, a registrant was required to send written notice to the state registry of a change in residence within five days after the change occurred. CP 2009 § 11-705(d). The Court of Appeals, however, held that an earlier version of Section 11-705(d) did not apply to homeless registrants. *Twine v. State*, 395 Md. 539, 550 (2006). Subsequently, the General Assembly enacted, as a part of the 2010 amendment to MSORA, additional registration requirements for a "homeless registrant." CP 2010 § 11-705(d). Section 11-705(d) then read:

> **(d) Homeless registrants**
>
> > (1) A homeless registrant also shall register in person with the local law enforcement unit in each county where the registrant habitually lives:
> >
> > > (i) within 3 days after the earlier of the date of release or after registering with the supervising authority; and
> > >
> > > (ii) within 3 days after entering and remaining in a county.
> >
> > (2) After initially registering with a local law enforcement unit under this subsection, a homeless registrant shall register once a week in person during the time the homeless registrant shall register once a week in person during the time the homeless registrant habitually lives in the county.

On August 21, 2011, appellant moved out of his residence after an argument with his wife and began living out of his vehicle. On September 11, 2011, a law enforcement officer went to appellant's former residence in Frederick County and learned from appellant's son that appellant had not been living there for some time. The next day the officer contacted

7

appellant by phone, and appellant admitted that he had been homeless since August 21, 2011. Appellant also admitted that, although he understood the nature of his registration requirements, he failed to notify local law enforcement of "any changes."

On October 7, 2011 a grand jury in Frederick County indicted appellant for his "knowing" failure "to register one time per week in person with the Frederick County Sheriff's Office as required of a homeless registrant."[8] In response to the indictment, at a hearing on January 17, 2012, on the failure to register charge, appellant waived his right to jury trial and pled not guilty on an agreed statement of facts. Appellant agreed that the State could prove that appellant knowingly failed to register each week in person while he was homeless from August 21, 2011 to September 11, 2011. Appellant argued, however, that the registration requirement was "illegal" under the federal and state constitutional prohibitions on *ex post facto* laws because he was not required to register at the time of his plea or sentencing.[9]

---

[8] The indictment originally stated that appellant had unlawfully and knowingly failed to "file written notice with the Frederick County Sheriff's Office within three days of change of address." At the January 17, 2012 hearing, the State, with the approval of the circuit court and appellant's trial counsel, amended the charge to read that appellant "unlawfully did knowingly fail to register one time per week in person with the Frederick County Sheriff's Office as required of a homeless registrant."

[9] Appellant also argued that the registration requirement violated his due process rights because he never had "a dangerousness hearing to determine whether [appellant] needed to be on the sex offender registry," as well as on equal protection, double jeopardy, and bill of attainder grounds. Those arguments are not raised in the instant appeal.

The circuit court found appellant guilty and sentenced him to five years' incarceration, with all but eighteen months suspended, and three years' supervised probation.[10] On January 24, 2012, appellant filed a timely notice of appeal.

## STANDARD OF REVIEW

When this Court reviews a conviction for the sufficiency of the evidence, our duty "is to determine whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found each element of the crime beyond a reasonable doubt." *Twine*, 395 Md. at 554. If, however, determining the sufficiency of the evidence "'involves an interpretation and application of Maryland statutory and case law, [this Court] must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review.'" *Barnes v. State*, 195 Md. App. 1, 6 (2010) (quoting *Gray v. State*, 388 Md. 375 (2005)), *vacated*, 423 Md. 75 (2011). Whether the prohibition against *ex post facto* laws contained in Article 17 of the Maryland Declaration of Rights precludes the State from requiring appellant to register as a sex offender presents a preliminary question of law that we review *de novo*. *See Davis v. Slater*, 383 Md. 599, 604 (2004).

## DISCUSSION

### I. Sufficiency of the Evidence

Appellant argues that under *Doe v. Department of Public Safety & Correctional*

_____

[10] Appellant's failure to register was deemed a felony, punishable by up to five years of incarceration, because appellant stipulated that he previously had been found guilty of failing to register. CP 2010 § 11-721(b)(2).

9

*Services* ("*Doe I*"), 430 Md. 535 (2013), the State cannot legally require him to register as a sex offender, because MSORA was retroactively applied to him in violation of the *ex post facto* provisions of Article 17 of the Maryland Declaration of Rights. Appellant contends that, because the State cannot establish that he had a legal duty to register, there is insufficient evidence to sustain his conviction for failure to register under CP 2010 §§ 11-705 and 11-721(a). Appellant asks this Court to both vacate his conviction for failure to register, and remand the instant case to the circuit court with the instruction to order (1) the removal of appellant's name and likeness from the registry, and (2) his exemption from future registration. The State responds that *Doe I* is "factually and legally inapposite and, thus, does not equate to relief for [appellant]." Because the parties rely heavily on *Doe I*, we turn to the facts and holding of that opinion.

*Doe I*

In June 2014, the Court of Appeals issued a second opinion in the *Doe* matter, in which it concisely summarized the facts of *Doe I* as follows:

> In 2006, Doe pled guilty to and was convicted in the Circuit Court for Washington County of a single count of child sexual abuse arising out of an incident involving inappropriate contact with a thirteen-year-old student that occurred during the 1983-84 school year when Doe was a junior high school teacher. Doe was sentenced to ten years incarceration, with all but four and one half years suspended, and three years supervised probation upon his release. Although Doe's plea agreement did not address registration as a sex offender as one of the conditions of probation, Doe was ordered at sentencing to "register as a child sex offender." He was also ordered to pay a $500 fine. Following his sentencing, Doe filed a Motion to Correct an Illegal Sentence challenging both the fine and the requirement that he

10

register as a child sex offender. The Circuit Court agreed with Doe and issued an order striking the fine and the registration requirement. Doe was released from prison in December 2008. On October 1, 2009, Doe's probation officer directed him to register as a child sex offender. Doe maintained that he did not agree with the requirement, but, against the advice of counsel, he registered as a child sex offender in early October 2009.

*Dep't of Pub. Safety & Corr. Servs. v. Doe*, 439 Md. 201, 208 (2014).

The Department ordered Doe to register as a sex offender in October 2009, because the 2009 amendment to MSORA required the registration of all sex offenders who had committed offenses before October 1, 1995, but who were convicted after that date ("2009 Retroactivity Provision"). *Doe I*, 430 at 540; *see* CP 2009 § 11-702.1(c)(ii). In October 2009, after Doe complied with the registration order, he filed a civil complaint for declaratory judgment, which

> advanced three arguments, including that to require him to register, when he was not informed of that requirement when he pled guilty, would improperly render his guilty plea involuntary. None of the arguments advanced in the Complaint, however, explicitly addressed the constitutionality of the registration requirement . . . . During the Circuit Court proceedings, the parties addressed the issues presented in [Doe]'s Complaint. In addition, counsel for the State argued to the court that requiring [Doe] to register did not violate the prohibition against *ex post facto* laws. At the end of the hearing, the trial judge denied [Doe]'s request for declaratory relief and ordered that [Doe] "shall not be removed from the sex offender registry."

> [Doe] noted an appeal to the Court of Special Appeals. In [Doe]'s appeal, he once again contended that requiring him to register as a sex offender violated the terms of the plea agreement. In addition, [Doe] explicitly advanced challenges to the application of the statute on *ex post facto,* bill of attainder, equal protection, and due process grounds . . . . In an unreported opinion, the intermediate

11

appellate court rejected all of [Doe]'s arguments and affirmed the trial court's judgment requiring [Doe] to remain on the Maryland Sex Offender Registry.

*Doe I*, 430 Md. at 541-42 (footnotes omitted).

The Court of Appeals granted *certiorari*, and in a plurality opinion, held that "requiring [Doe] to register as *a result of the 2009 and 2010 amendments* violates the prohibition against *ex post facto* laws contained in Article 17 of the Maryland Declaration of Rights." *Id.* at 537 (emphasis added). The Court concluded that, "[p]ursuant to our determination that [Doe] may not be compelled to register, his name and likeness shall be removed from the Maryland Sex Offender Registry." *Id.*

## Application of *Doe I*

### *The State's Argument Under* Sinclair v. State[11]

The State contends that *Doe I* does not apply in part, because "[t]he procedural posture of the appeal in *Doe* [*I*] is legally inapposite to the posture of the present appeal." Specifically, the State asserts that Doe sought relief via a civil complaint for declaratory judgment, whereas appellant seeks a declaration exempting him from the sex offender registry in the context of his criminal case. *See Doe I*, 430 Md. at 541. The State argues that this Court cannot grant declaratory relief in a criminal case, and in the absence of declaration removing appellant from the registry, he remains a registrant who must comply with MSORA until he is relieved of those obligations.

---

[11] 199 Md. App. 130 (2011).

12

The State bases its argument on our decision in *Sinclair v. State,* 199 Md. App. 130 (2011). In that case, Sinclair was ordered to register as a sex offender for the first time under the 2009 Retroactivity Provision. *Id*. at 133-34. In response, Sinclair filed a motion in his criminal case "seeking a judicial determination that he was not required to register as a child sex offender." *Id*. at 132.

The circuit court denied the motion, and we vacated that judgment without reaching the merits of Sinclair's claim. *Id*. at 134, 140. We observed that "[t]he issue that Sinclair seeks to raise, and the relief that he seeks, presents a civil matter that is *not cognizable in his criminal cause. . . .* His statutory construction point is directed to a *collateral consequence of the conviction*." *Id*. at 135 (emphasis added). Accordingly, because registration was a collateral consequence of Sinclair's conviction, in order to challenge that requirement, Sinclair was required to file a declaratory judgment action separate and distinct from his criminal conviction. *Id*. at 135-37.

Appellant, like Sinclair, seeks a declaration removing him from the sex offender registry in the context of his criminal case. Under *Sinclair*, this Court cannot order the circuit court to "issue a declaratory judgment in a criminal cause" regarding appellant's status as sex offender, regardless of the decision in *Doe I. Id*. at 140. Although the Court in *Doe I* held that the 2009/2010 amendments had crossed the line from "civil regulation to *an element* of the punishment of offenders" in the *ex post facto* context, that ruling did not transform the sex offender registration scheme into a sanction in the context of a criminal case. *See Doe*

13

*I*, 430 Md. at 578 (McDonald, J., concurring) (emphasis added).

Accordingly, registration remains a collateral consequence of criminal punishment, and thus appellant can seek removal from the sex offender registry only through a civil action for declaratory judgment. *See Sinclair*, 199 Md. App. at 137 (holding that a complaint seeking declaratory judgment remains "the procedure for obtaining, under appropriate circumstances, a ruling on the constitutionality of a statute, the violation of which carries criminal sanctions"). Therefore, regardless of the merits of appellant's contentions, this Court has no authority in the instant case to instruct the circuit court to order the Department to remove appellant from the sex offender registry.

Unlike Sinclair, however, appellant also asks this Court to vacate his conviction for failure to register. *See id*. at 135. Appellant clearly can challenge his criminal conviction on direct appeal, and thus *Sinclair* does not apply to a review of appellant's criminal conviction under *Doe I*.

The question of whether the State can constitutionally require appellant to register is central to the review of his conviction, because the existence of a legal duty to register is a necessary element of failing to register under CP 2010 § 11-721. Section 11-721 expressly states that sex offenders must provide accurate information and notice "as required" by "this subtitle" and various sections therein. CP 2010 § 11-721(a). Clearly then, if appellant is not "required" to register under MSORA, he cannot be convicted of failing to register under CP 2010 § 11-721. Notably, when the Fourth Circuit reviewed the federal Sex Offender

14

Registration and Notification Act ("SORNA"), it also concluded that a registration requirement was an element of the failure-to-register offense. *See United States v. Gould*, 568 F.3d 459, 470 (4th Cir. 2009) ("As noted above, the elements of a SORNA failure to register offense . . . are that the defendant (1) was required to register . . . ."), *cert. denied*, 559 U.S. 974 (2010); *see also State v. Abshire*, 677 S.E.2d 444, 449 (N.C. 2009) (holding that one essential element of the crime of "failing to notify the appropriate sheriff of a sex offender's change of address" is that "the defendant is a 'person required . . . to register'").

We acknowledge that the basis for removing appellant from the registry and vacating his conviction under CP 2010 § 11-721 is the same, that is, a determination that appellant has no legal duty to register. The overlap exists as a result of the legislative decision to enforce the civil sexual offender registration scheme through criminal sanctions. The partnership of the civil and criminal systems, however, does not compromise independence and integrity of either one. Thus we cannot order a declaration removing appellant from the registry without a civil complaint under *Sinclair*, but must consider whether the State unconstitutionally prosecuted appellant for failure to register. *Accord Sanchez v. State*, 215 Md. App. 42, 49-50 (2013). Accordingly, we turn now to the question of whether the State can legally require appellant to register under *Doe I*.

*Appellant's* Ex Post Facto *Claim Under* Doe I

As stated above, appellant contends that the Department cannot order him to register under *Doe I*, because the application of MSORA violates Article 17's prohibition on *ex post*

15

*facto* laws. More specifically, appellant claims that the 2009/2010 amendments at issue in

*Doe I* "apply equally" to both Doe and him. We disagree.

The 2009/2010 amendments did not apply retroactively to appellant as they did to

Doe. The Department ordered Doe to register pursuant to the 2009 Retroactivity Provision.

*Doe I*, 430 Md. at 540-41. Because Doe was required thereby to register, the 2010

Retroactivity Provision then subjected Doe to the 2010 amendment to MSORA, which

reclassified him as a Tier III sex offender and required him to register for life. *See*

CP 2010 § 11-702.1(a) (stating that "this subtitle shall be applied retroactively to include a

person who . . . was subject to registration under this subtitle on September 30, 2010"). On

the other hand, appellant was required to register under the 2001 Retroactivity Provision.

Thus, unlike Doe, appellant was not placed on the sex offender registry by the 2009

amendment to MSORA. In *Doe I*, the Court of Appeals did not decide whether the

retroactive application of MSORA as a result of the 2001 amendment violated Article 17's

prohibition against *ex post facto* laws,[12] and appellant advances no argument in the instant

---

[12] The State asserts that "[a]fter [appellant] was required to register in 2001, the Court of Appeals in *Young* held that MSORA was not penal, and the Court in *Doe [I]* did not overrule *Young*." The State refers to *Young v. State*, 370 Md. 686 (2002), but misapplies that decision. Although the Court of Appeals issued its ruling in *Young* in 2002, after the passage of the 2001 Retroactivity Provision, the decision did not review MSORA as amended in 2001. Instead, the *Young* Court considered Maryland Code (1957, 1996 Repl. Vol., 2000 Cum. Supp.), Article 27, § 792, which was the version in effect at the time of Young's conviction and sentencing. *See Young,* 370 Md. at 690 & n.1. Moreover, the *Young* court did not review MSORA under Article 17's prohibition against *ex post facto* laws, but instead for a violation of due process. *Id.* at 690.

16

appeal regarding the constitutionality of the 2001 amendment as applied to him.

As a sex offender registrant, however, appellant is subject to the 2010 Retroactivity Provision, *see* CP 2010 § 11-702.1(a), and thus is required to comply with MSORA as amended in 2010. Unlike *Doe*, the 2010 amendment *reduces* appellant's registration period from lifetime to twenty-five years. Thus, with regard to the registration period, the retroactive application of MSORA by the 2010 amendment actually benefits appellant, rather than "imposing an additional sanction for [appellant]'s crime." *Doe I*, 430 Md. at 568.

On the other hand, the retroactive application of MSORA by the 2010 amendment did impose on appellant many additional restrictions and conditions of registration. In his concurring opinion in *Doe I*, Judge Harrell set forth several of such additional requirements and conditions. He wrote:

> Since 2009, several amendments to the Maryland Sex Offender Registration Act have been adopted, including, but not limited to: (1) adding juvenile sex offenders to the list of those who must register; (2) requiring registration statements to include a list of aliases, electronic email addresses, computer screen names, or any name by which the registrant had been legally known; (3) requiring tier III offenders (such as Doe) to register in person every three months for life; (4) requiring that registrants provide three days notice after changing addresses; (5) ordering registrants to notify law enforcement, prior to the relocation, when the registrant obtains a temporary residence or changes the location where the registrant resides or "habitually lives" for more than 5 days; (6) requiring homeless registrants to register in person with the local law enforcement in each county where the registrant habitually lives; (7) publicize registration information on the Internet; and (8) granting the Department of Public Safety and Correctional Services and law enforcement the discretion to provide notice of a registration statement or a registrant's change of address to whomever they deem

17

necessary so as to protect the public from the registrant.

*Id.* at 569-70 (citing CP 2010 §§ 11-701, -705, -706, -717, -718).

Not listed above is the additional requirement that a homeless registrant register once a week. *Compare* CP 2010 § 705(d), *with* CP 2009 § 11-705. As stated earlier in this opinion, the requirement of in-person registration once a week was the sole basis of appellant's conviction for failing to register under CP 2010 § 11-721.

In *Doe I*, the Court of Appeals did not decide the issue of whether the retroactive application of the requirements and conditions of registration added by the 2010 amendment to MSORA violate the prohibition against *ex post facto* laws when applied to persons, like appellant, *who were legally already on the registry*. We need not address that issue here, because, given the procedural posture of the instant case, only one additional requirement of the 2010 amendment was retroactively applied to appellant, namely, the obligation of registering in person once a week as a homeless registrant. All of the other additional requirements and conditions of registration apply to appellant, but none of them were the basis for the conviction that appellant seeks to overturn.

Clearly, the General Assembly had a legitimate regulatory purpose in enacting additional registration requirements for homeless registrants. *See* CP 2010 § 11-705(d). By definition, a homeless individual does not have a place of residence, and usually does not have a place where he or she usually lives. Without frequent in-person registration, law enforcement would be unable to properly monitor these registrants. Therefore, we conclude

18

that the additional registration requirement retroactively imposed on appellant as a homeless registrant by the 2010 amendment to MSORA does not constitute an "additional sanction" for his crime in violation of the prohibition against *ex post facto* laws under Article 17 of the Declaration of Rights. Accordingly, the requirement that appellant register as a homeless registrant under CP 2010 § 11-705(d) does not violate the Maryland constitutional prohibition against *ex post facto* laws, and thus his conviction for failure to comply with that section will stand.

## II. *Enforcement of the Plea Agreement*

Appellant also contends that this Court "must enforce the plea agreement," and that, because the "plea agreement did not contemplate a registration requirement, he never had a legal duty to register." Therefore, according to appellant, his conviction for failing to register must be vacated. We disagree.

Appellant did not request the enforcement of his plea agreement in circuit court below, and thus the issue has not been preserved for appellate review. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court."). Accordingly, we decline to reach the merits of this argument, or consider whether appellant can request the enforcement of his plea agreement in this procedural context, *i.e.,* where the plea agreement in question is associated with a predicate offense and not the criminal conviction that is the subject of the direct appeal.

19

For the reasons stated above, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**