**Campbell v. State, No. 1285 of the 2016 Term, Opinion by Moylan J.**

**HEADNOTE:**

   **MOTION FOR SUMMARY JUDGMENT – TAKING THE PROCEDURAL CONTEXT FOR GRANTED – THE TIE GOES TO THE STATUS QUO – THE ELEPHANT IN THE ROOM: DECLARATORY JUDGMENT LAW – BEGINNING THE GAME IN THE FIFTH INNING**

Circuit Court for Baltimore City
Case No. 24C15006785

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1285

September Term, 2016

_____

MARK CAMPBELL

v.

STATE OF MARYLAND

_____

Beachley,
Shaw Geter,
Moylan, Charles E., Jr.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Moylan, J.

_____

Filed: December 5, 2017

The appellant, Mark Campbell, asks us to resolve the merits of a purely hypothetical question sitting for the moment in a procedural vacuum chamber. He would like us to decide whether the military offenses to which he pled guilty in a Court Martial proceeding would, had they been committed in Maryland, require him to register as a Tier II sex offender in Maryland. This we not only will not decide; this we may not decide. The issue the appellant would like to have resolved would assume materiality only if he had successfully reached Procedural Step Four or Procedural Step Five of this convoluted litigation. How does the appellant suggest that he has done so? By simply opting to start at Step Four, arriving there by magic carpet and blithely finessing antecedent Steps One, Two, and Three. Those antecedent procedural steps, however, must be doggedly traversed before the appellant's proposed issue can acquire necessary materiality. There is no procedural magic carpet.

## Taking The Procedural Context For Granted

It is only in his Statement of the Case that the appellant so much as mentions the broad procedural expanses over which he has magically floated but otherwise disdained to notice. He takes the procedural context of the case for granted, at his peril. As a Senior Airman in the United States Air Force, the appellant, on August 4, 2014, entered guilty pleas to two counts of child sexual abuse pursuant to Article 120b of the Uniform Code of Military Justice. It is at that point in his travails that the Statement of the Case picks up the procedural sequelae.

> Upon his release from confinement, Mr. Campbell, a Maryland resident, was ordered to register as a Tier II registrant for a period of 25 years. A Complaint for Declaratory Judgment and Request for Hearing was filed in the Circuit

Court for Baltimore City on December 10, 2015. <u>Appellee filed an Answer to Complaint for Declaratory Judgment</u> on January 21, 2016. Mr. <u>Campbell filed a First Amended Complaint for Declaratory Judgment</u> on April 15, 2016, and <u>Appellee filed its Response</u> on May 20, 2016. On July 5, 2016, <u>Appellee filed a Motion for Summary Judgment which was granted</u> by the Honorable Alfred Nance on July 26, 2016. A timely appeal was noted.

(Emphasis supplied).

Of necessity, the appellate process is tightly constrained. Appellate judges are not knights errant, scanning the horizon for issues in distress that call out for rescue or remedy. The appellate process reviews legal proceedings for reversible trial error when such error is identified by counsel. Ultimate trial error, moreover, cannot be committed by the attorneys or by the parties or by the witnesses or by the jurors. Fate itself cannot commit trial error. Ultimate error can only be committed by the judge who makes an erroneous ruling or who erroneously fails to rule when properly and timely called upon to do so. As Judge Powers pointed out for the Court in <u>Braun v. Ford Motor Company</u>, 32 Md. App. 545, 548, 363 A.2d 562 (1976):

> <u>We know of no principle or practice under which a judgment of a trial court may be reversed or modified on appeal except for prejudicial error committed by the trial judge</u>. It is a misuse of language to label as error any act or failure to act by a party, an attorney, a witness, a juror, or by anyone else other than the judge. In other words, <u>error in a trial court may be committed only by a judge, and only when he rules, or, in rare instances, fails to rule</u>, on a question raised before him in the course of a trial, or in pre-trial or post-trial proceedings.

(Emphasis supplied). <u>See also Medley v. State</u>, 52 Md. App. 225, 448 A.2d 363 (1982); <u>Howell v. State</u>, 56 Md. App. 675, 685, 468 A.2d 688 (1983) ("The judicial machinery cannot, by definition, possibly malfunction when it has never been called upon to function.").

The critical ruling in the present case was that made by Judge Alfred Nance in the Circuit Court for Baltimore City when he granted Summary Judgment in favor of the State. We must decide <u>de novo</u> whether that ruling, as a matter of law, was or was not correct. To assist the appellate court in making such a determination, Maryland Rule 8–501(c) prescribes what material must be included by the appellant in the appellate extract. In pertinent part, the rule provides:

> **(c) Contents.** The record extract shall contain <u>all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal</u> and any cross-appeal. It shall include the circuit court docket entries, the judgment appealed from, and such other parts of the record as are designated by the parties pursuant to section (d) of this Rule.

(Emphasis supplied).

## The Tie Goes To The Status Quo

At this point in the procedural process, we hit our first, if not indeed an insurmountable, speed bump. We have no idea whether Judge Nance, in granting Summary Judgment, was right or wrong. We do not know what basis the State had for requesting Summary Judgment. We do not know what basis Judge Nance had for granting Summary Judgment. The appellant has not provided a copy of the State's motion, as he should have. If the appellant opposed the motion, we are told nothing in that regard. If there was argument on the motion, we are told nothing in that regard. The record on this issue is a total blank. In short, the appellant has not provided us with any information on which we could base a reasoned decision.

The result, therefore, is easy. If we do not know the State's basis for asking for Summary Judgment and do not know why Judge Nance decided as he did, we will simply

3

presume that he did the right thing for the right reason. It is not the State's burden to persuade us that Judge Nance did the right thing. It is the appellant's burden to persuade us that Judge Nance did the wrong thing. This the appellant has not done. The nothing-to-nothing tie goes to the status quo.

The appellant will, no doubt, protest that, from his brief Statement of the Case alone, the only logical inference is that the subject matter of the Summary Judgment motion was no such issue as limitations or subject matter jurisdiction or standing, but was necessarily the adequacy of the appellant's underlying request for Declaratory Judgment. Even if we indulge the appellant in such an inference, we immediately confront an even more imposing procedural barrier.

**The Elephant In The Room:**
**Declaratory Judgment Law**

The undergirding pleading on which this appeal is predicated was the appellant's Complaint requesting that the Circuit Court for Baltimore City issue a Declaratory Judgment, declaring the dispositive similarity or dissimilarity between the federal sexual abuse crimes and the Maryland sexual abuse crimes. This case took on life when the appellant, on December 10, 2015, filed in the Circuit Court for Baltimore City a Complaint for Declaratory Judgment. Every stage of the litigation that followed gravitated around that central pleading. The State filed an answer to the Complaint; the appellant amended the Complaint; the State answered the amended complaint. The State's motion for Summary Judgment and Judge Nance's granting of Summary Judgment were with exclusive reference to that Complaint.

4

From start to finish, this is a Declaratory Judgment case. It is not a case about the respective State and federal definitions of child sexual abuse. That is, at best, secondary. The case is about what Maryland's Declaratory Judgment law can or should do with respect to those definitions. Bizarrely, Maryland's Declaratory Judgment law is the unmentioned elephant in the room. It is like Daphne du Maurier's "Rebecca," who does not even appear in the novel that bears her name. After a single mention in the Statement of the Case, the words "Declaratory Judgment" never appear in the entire appellate brief. Nor are they even indirectly alluded to. In this case, one cannot arrive at child sexual abuse without going through Declaratory Judgment law. The passage through Declaratory Judgment law, moreover, may not be blithely assumed. If we declare nothing else, let it be that we acknowledge the elephant to be in the room.

Maryland Code, Courts and Judicial Proceedings Article, includes Title 3, Subtitle 4. Declaratory Judgment. It embraces 15 subsections, Sect. 3-401 thru Sect. 3-415. Not once is this core statute referred to. Not once are any of the dozens and dozens of cases interpreting this law, spelling out its procedural requirements and its binding limitations, cited or relied upon. We are not here asked to infer some trivial fact or implicit procedural step. Without so much as being asked, we are left to infer the central procedural engine of this litigation, to wit, the proper application of the Declaratory Judgment law. We are left to grope with evanescence.

Although we cannot be sure as to why the State asked for Summary Judgment and cannot be sure as to why Judge Nance granted Summary Judgment, it seems likely that it was because of some flaw in the appellant's Complaint for Declaratory Judgment. Griffin

<u>v. Anne Arundel County</u>, 25 Md. App. 115, 137, 333 A.2d 612 (1975) ("[I]t was proper for the chancellor to dispose of the petition for declaratory judgment as on a motion for summary judgment."). It is inconceivable, therefore, that we have not been furnished with a copy of that critical Complaint. A month after the Complaint was filed, the State filed its Answer. Just as we have never seen the original Complaint, we have never seen the State's Answer. We have no idea whether the State's opposition was based upon its assessment that the Complaint was substantively flawed, procedurally flawed, or both.

It is clear, however, that there may have been some flaw in the Complaint because, in response to the State's Answer, the Appellant filed a First Amended Complaint for Declaratory Judgment. We have never seen that First Amended Complaint. The State subsequently filed a response to that amended Complaint. We have never seen that response. In this fourfold thrust-and-parry between December 2015 and May 2016, there was obviously serious contention that may have had decisive bearing upon the Summary Judgment decision of July 2016. We have no glimmer, however, as to what that contention was all about.

The obscurity in which we are left is even deeper. Declaratory Judgment law is an intricately complicated subject. Above and beyond the failure to provide any insight into what was going on by way of the record extract, the appellant does not even mention the subject of Declaratory Judgment in the argument section of his brief. The entire subject is an utter and absolute blank. Perhaps the pleading itself was procedurally flawed. <u>Master v. Master</u>, 223 Md. 618, 626, 166 A.2d 251 (1960) ("It has been held that more than a mere

prayer for declaratory relief is required in a pleading if the jurisdiction of the court to declare rights and status is to be invoked.").

Does Declaratory Judgment law, moreover, even apply to a case such as this, originating in a criminal prosecution, albeit involving a serious collateral consequence of that prosecution? Sinclair v. State, 199 Md. App. 130, 139, 20 A.3d 192 (2011) ("It is sufficient for the present to hold, as we do, that a petition for a declaratory judgment may not be filed in a criminal cause."). In Sinclair, as here, the appellant was not challenging the original criminal conviction but was challenging a collateral consequence of that conviction. Judge Rodowsky wrote for this Court:

> Here, in Sinclair's criminal cause, the judgment of conviction has been final for many years, and Sinclair does not challenge that conviction in this proceeding. Under these circumstances, Maryland law does not recognize the filing of a declaratory judgment action in a criminal cause, even if the object of the declaratory judgment action is to obtain a ruling concerning a collateral consequence of the conviction.

199 Md. App. at 140 (emphasis supplied). See also Edmund v. State, 398 Md. 562, 570, 921 A.2d 264 (2007). The appellant does not even address this issue.

The appellant casually assumes the only question to be whether the federal military offense is so dissimilar from the Maryland offense as to preclude the imposition of the obligation to register as a sex offender. The more mundane but pertinent question, however, is whether the appellant satisfied the jurisdictional qualifier for invoking Declaratory Judgment law as his modality for challenging the required registration. This latter question the appellant has not even considered, but he ignores it at his peril.

7

Seemingly, the appellant would have us assume that Judge Nance actually considered the various and numerous arcana of Declaratory Judgment law, concluded that there was no procedural inadequacy with the appellant's Complaint, and necessarily based his decision on the ultimate merits comparing the federal and State crimes. That is wild and runaway speculation. How could we possibly say that the grant of Summary Judgment was not based on a procedural flaw in the Complaint for Declaratory Judgment if we have never been shown that Complaint? If he actually made a substantive comparison of the two sets of crimes, moreover, the question would inevitably arise as to why he did not issue a Declaratory Judgment to that effect rather than grant Summary Judgment. <u>Case v. Comptroller of Maryland</u>, 219 Md. 282, 288, 149 A.2d 6 (1959) ("Ordinarily, whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made."). Of a dozen possible reasons for the granting of Summary Judgment, the appellant airily assumes the catalytic one to have been the one he would like to argue. Navigationally, the magic carpet may carry the contention-framing appellant anywhere he wishes to go. Our earthbound reviewing function, however, will not fly with him.

## Beginning The Game In The Fifth Inning

In the last analysis and switching our primary metaphor, the appellant would like to start the game in the fifth inning. That would present, however, numerous and vexing problems. Notwithstanding the appellant's obsession with the nuances of federal and State child sexual abuse laws and to the appellant's undoubted chagrin, we are utterly unconcerned with that issue. In some other case on some other day, it may be a fascinating

8

subject to explore. In this case, however, it does not make any difference. If, by some procedural default, one forfeits the game in the first three or four innings, then what might have happened in the fifth inning, had the fifth inning ever taken place, simply does not matter.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

9